<div align="center">

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

</div>

**WAYNE P. BUCHANAN,**

    **Plaintiff,**

                                                  Case No. 1:04-CV-436

v.                                                   Hon. Gordon J. Quist

**GREEN MEADOW VILLAGE, L.L.C.,**

    **Defendant.**

_____/

<div align="center">

**REPORT AND RECOMMENDATION**

</div>

*Pro se* plaintiff Wayne P. Buchanan has filed a federal action pursuant to 42 U.S.C. § 3617 (the Fair Housing Act or "FHA"). This matter is now before the court on plaintiff's motion for summary judgment (docket no. 76). This matter has been referred to the undersigned for adjudication on a report and recommendation.

    **I.**    **Background**

Plaintiff has filed a multi-count amended complaint.[1] In Count I, plaintiff alleges that defendant pursued an unsuccessful eviction suit against him in retaliation for plaintiff's "attempting to inform neighbors of Fair and Equal Housing Rights, Civil Rights and Civil Liberties with brochures, booklets and handwritten Notices." In Count 2, plaintiff alleges that defendant harassed him and attempted to have him arrested by the United States Postal Inspector. In Count 3, plaintiff alleges that defendant, apparently through its manager and an attorney "proceeded with an improper

---

[1] Plaintiff's amended complaint is designated "complaint" and appears as docket no. 12.

purpose, by refusing to withdraw their intent to evict" in a state court case. In Count 4, plaintiff alleges that defendant, apparently through its manager and an attorney, "willfully denied discovery" in a state court suit. In Count 5, plaintiff alleges that defendant's new attorney used the judicial system to harass him by attempting to overturn a state court ruling that there was "no just cause" to evict him. Plaintiff characterizes his claims as being for malicious prosecution, abuse of process, "using the Judicial system to harass and disrupt my life," and intentional infliction of emotional distress. Amended Comp. at pp. 2, 11, 12. Plaintiff seeks damages in the amount of $56,224.84. *Id.* at p. 13.

## II. Discussion

### A. Standard of review for summary judgment

Plaintiff has moved for summary judgment pursuant to Fed. Rules Civ. Proc. 56(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment,

thecourt views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Plaintiff's motion for summary judgment

Plaintiff apparently seeks summary judgment on his Fair Housing Act claim. In an earlier report and recommendation, the undersigned identified plaintiff's claim as brought pursuant to 42 U.S.C. § 3617, which provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by section 803, 804, 805, or 806 [i.e., 42 U.S.C. §§ 3603, 3604, 3605, or 3606]." *See* Report and Recommendation (July 5, 2005); Order adopting Report and Recommendation (Aug. 1, 2005). The Report also identified the elements of such a claims as follows:

> In *Stackhouse v. DeSitter*, 620 F. Supp. 208, 210-11 (N.D. Ill. 1985) the court found that § 3617 made it unlawful to coerce, intimidate, threaten, or interfere with any person in three distinct circumstances: "(1) in the exercise or enjoyment of any right protected by §§ 3603-3606; (2) on account of the person's having exercised or enjoyed such right; and (3) on account of his having aided or encouraged any other person in the exercise or enjoyment of such a right." *Stackhouse*, 620 F. Supp. at 210-11. Although plaintiff does not identify himself as a member of a protected class, a § 3617 action is not limited to members of a protected class. In *Frazier v. Rominger*, 27 F.3d 828 (2nd Cir.1994), the court pointed out that § 3617 protects two distinct groups of individuals. "First, it safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise of enjoyment of their Fair Housing Act rights." *Frazier*, 27 F.3d at 833. "Second, it protects third parties, not necessarily members of the protected class, who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act rights." *Id.*
>
> Because plaintiff does not allege that he is a member of a protected class, the only possible claim he can assert under § 3617 is that he aided or encouraged another person in exercising or enjoying their rights under §§ 3603-06 of the Fair Housing Act. *See, e.g., Berlickij v. Town of Castleton*, 248 F.Supp.2d 335, 346 (D.Vt. 2003)

> ("Because [plaintiff] has not claimed that she is a member of a protected class, she must be able to prove at trial that she was an individual who aided or encouraged members of a protected class in the exercise or enjoyment of their Fair Housing Act rights, and that she, not members of the protected class, suffered coercion, intimidation, threats or interference"); *Stackhouse*, 620 F. Supp. at 211 ("[o]ne example of a situation falling within the scope of the third phrase is when an apartment building owner fires or retaliates against a building manager who has rented a unit to a black (or other minority member) against the owner's wishes"); *Wilkey v. Pyramid Construction Co.*, 619 F. Supp. 1453, 1454 (D. Conn. 1985) (§ 3617 allowed claim by non-minority rental agent or secretary who was terminated for refusing to discriminate against minorities seeking housing).

Report and Recommendation (July 5, 2005) at 5-6.

The court has had a difficult time deciphering plaintiff's FHA claims and the factual basis to support those claims. Plaintiff has presented copies of transcripts from his state court eviction action, *Green Meadow Village v. Wayne Buchanan*, No. C03-0496LT (63rd Dist. Court). Because plaintiff's FHA claims appear to be based in large part upon the matters litigated in this eviction action, the court will review the state court's factual findings to shed some light on plaintiff's claims. The state court action involved defendant's request for a just cause termination for a tenancy in a mobile home pursuant to MCL § 600.5775. *Green Meadow Village* Opinion at 4 (docket no. 56). Green Meadow Village presented three grounds to terminate plaintiff's tenancy. First, plaintiff failed to comply with the rules and regulations of the mobile home park ("the park"), specifically by not complying with a yard maintenance rule regarding leaves and maintaining his yard. *Id.* at 6. Second, plaintiff violated a rule regarding use of the mobile home owner's individual U.S. Postal box, one that precluded plaintiff from entering another person's mailbox for personal solicitation rather than to mail stamped items. *Id.* at 6-7. Third, it was alleged that plaintiff was soliciting and sending notices throughout the park. *Id.* at 7.

In her opinion entered August 7, 2003, the state court judge noted that 21 witnesses testified in this matter. *Green Meadow Village* Opinion at 4. A major issue involved notices that plaintiff sent in search of Amanda David, whom the judge characterized as the 21-year-old daughter of a park resident. *Id.* at 7-8. Plaintiff apparently produced some 100 notices to locate this woman. *Id.* The judge characterized these notices as "weird" and "odd," and an inappropriate way for plaintiff "to find some young woman that he wanted to have a date with, that he wanted to go out to dinner with, that he wanted to ask to the movie." *Id.* at 7, 10. Plaintiff also sent out notices to at least 100 people in the park regarding purported harassment, slander and intimidation against him, as well as some information about people's equal rights, civil rights, civil liberties and HUD. *Id.* at 8-9. The court characterized the this hand-written notice as weird or odd. *Id.* at 9. Park residents received these notices in their mailboxes and complained about the notices to the park's manager. *Id.* at 9-10.

The court also heard testimony from another tenant, Ms. Buntin, regarding a 19 or 20-year-old African-American woman living with plaintiff. *Id.* at 10-11. Ms. Buntin, who also happened to be African-American, testified that the young woman came to her to discuss plaintiff and that the discussion did not place plaintiff in a good light. *Id.* at 11-12. Another neighbor, Ms. Conaway, hired plaintiff to fix her roof. *Id.* at 12. Ms. Conaway thought that plaintiff was sending her too many notes and wanted to date her. *Id.* at 12. The judge found that the bulk of the testimony (approximately four to six hours) was related to plaintiff's bizarre notices and how these notices upset his neighbors. *Id.* at 13.

The judge felt that defendant's response to plaintiff's behavior focused on his failure to perform lawn maintenance. *Id.* at 13-14. The court concluded that plaintiff's violation of the

park's rule regarding his failure to pick up leaves was not an appropriate issue for terminating a tenancy at a mobile home park. *Id.* at 14. Based upon the extensive testimony presented at trial, the judge agreed that plaintiff "was odd and was weird," but did not think that "being an odd person . . . rises to the level of a termination of a tenancy from a mobile home park." *Id.* at 14. The judge found that plaintiff's actions, which she described as "the leaf violation, this solicitation by using mailboxes, this violation of bothering or annoying people" did not rise to the level of a "just cause" for termination of his mobile home park tenancy. *Id.* Accordingly, the court found no cause of action on the suit, denied the requested eviction, and ruled that plaintiff would be allowed to stay in the park provided that he complied with all of the park's regulations. *Id.* at 14-15. Defendant's counsel pointed out plaintiff's testimony that he placed information (e.g., HUD pamphlets) in the park's laundry room. *Id.* at 16. In response to counsel, the judge stated that plaintiff's placement of such pamphlets was not a rule violation. *Id.* at 16.

The state court judge did not explicitly address plaintiff's claim that defendants tried to have him arrested by the postal inspectors. Plaintiff testified that the park's management sent a postal inspector to his home. *See* Trial Trans. Excerpt at 27 (docket no. 58). However, through his own testimony, plaintiff admits that he was not arrested; rather, the postal inspectors interviewed him regarding the notices, described the occurrence as a "minor situation," and told him "to put a stamp on this [the] next time and there'll [sic] be no problem." *Id.*

In opposition to plaintiff's motion for summary judgment, defendant submitted the affidavit of William Grondman, Sr., a member of Green Meadow L.L.C., and an owner of the park. Grondman states that he is familiar with plaintiff's claims and that the park took steps to evict plaintiff for violating park rules. Grondman Aff. at ¶ 3. He also states that the park did not coerce,

6

intimidate, threaten or interfere with plaintiff's rights under the FHA or in his efforts to encourage other tenants in the park to exercise rights under the Act. *Id.* Grondman further states that the park has never received any complaints from any third person that it has interfered with any person's rights under the Act. *Id.* at ¶ 4.

To establish an FHA claim under § 3617, plaintiff must demonstrate (1) that he aided or encouraged members of a protected class in the exercise or enjoyment of their FHA rights, and (2) that as a result of his actions, he suffered coercion, intimidation, threats, interference or retaliation. *See, e.g., Berlickij*, 248 F.Supp.2d at 346; *Stackhouse*, 620 F. Supp. at 211; *Wilkey*, 619 F. Supp. at 1454. A successful claim for retaliation under the FHA requires the plaintiff to prove: (1) that the plaintiff engaged in statutorily protected conduct; (2) that the defendant took adverse action against the plaintiff; and (3) that a causal connection exists between the adverse action and the protected activity. *Neudecker v. Boisclair Corporation*, 351 F.3d 361, 364 (8th Cir. 2003) (analogizing an FHA retaliation claim to a retaliation claim under the Americans with Disabilities Act).

Viewing the record in the light most favorable to defendant, the court concludes that genuine issues of fact exist with respect to plaintiff's FHA claim. While the record indicates that plaintiff had some involvement with at least one member of a protected class (i.e., the African American woman that lived in his mobile home), factual issues exist as to whether plaintiff aided or encouraged this woman, or any other member of a protected class, in the exercise of their rights under the FHA. Factual issues also exist with respect to whether defendant's actions, such as seeking to evict plaintiff or contacting the U.S. Postal Inspector, were related to plaintiff's exercise

of his statutorily protected rights under the FHA. Accordingly, the court cannot conclude that plaintiff is entitled to summary judgment on his FHA claim.

### **Recommendation**

I respectfully recommend that plaintiff's motion for summary judgment (docket no. 76) be **DENIED**.


Dated:  November 21, 2005            /s/ Hugh W. Brenneman, Jr.
                                     Hugh W. Brenneman, Jr.
                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


of his statutorily protected rights under the FHA. Accordingly, the court cannot conclude that plaintiff is entitled to summary judgment on his FHA claim.

### **Recommendation**

I respectfully recommend that plaintiff's motion for summary judgment (docket no. 76) be **DENIED**.


Dated:  November 21, 2005            /s/ Hugh W. Brenneman, Jr.
                                     Hugh W. Brenneman, Jr.
                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).