UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WAYNE P. BUCHANAN,

Plaintiff,

v. Case No. 1:04-CV-436

GREEN MEADOW VILLAGE, LLC HON. GORDON J. QUIST

Defendant.

_______________________________/

**OPINION**

This case was brought pursuant to the Fair Housing Act, 42 U.S.C. § 3601, et seq. (the "FHA"). Plaintiff, Wayne Buchanan ("Buchanan"), claims that Defendant, Green Meadow Village, LLC ("Green Meadow") violated Section 3617 of the FHA by retaliating against him for passing out handwritten material and official publications to other residents of Green Meadow's mobile home park. More specifically, Buchanan alleges that Green Meadow retaliated against him by attempting to evict him from the mobile home park after he passed out handwritten notices and official publications telling other residents of the mobile home park of their rights under the FHA.

**Findings of Fact**

This case was tried to the court on November 7, 2006. The court heard testimony from Buchanan and two witnesses called by Green Meadow. The court finds the facts as follows:

Buchanan has been a renter and resident of the Green Meadow mobile home park for many years going back to the early 1990's. He is a cab driver by trade when he is working. Starting in the spring or early summer of 2002, Buchanan delivered handwritten material and some official

publications informing other residents in the park about their rights under the FHA. Sometimes this material was placed in other residents' mailboxes. Other times the material was placed in the laundry room of the mobile home park. If the material was placed in the laundry room of the mobile home park, it would be thrown away by Peter Noorman, the park manager. Mr. Noorman did not know who was placing the FHA literature in the laundry room, and Mr. Noorman also threw out other papers and literature left in the laundry room.

On or about December 15, 2002, Buchanan passed out a two-page document to about 100 residents of the mobile home park by placing the document in their mailboxes. The first page reads as follows:

**Amanda**

Good News – No Worries

Please contact WAYNE A.S.A.P.

in Green Meadows Village

#29 at Port City Cab Co.

Don't believe gossip or rumors

CD demos are progressing
Remember the song copyright contracts

Remember the tatoo [sic]

Wish you were here

Let's talk. Peace.

(Def.'s Ex. 1 (the "Amanda Document".) The second page of the document is handwritten and basically is a recitation of the rights a person has under the FHA. It suggests that a person who

believes that he or she is suffering from harassment, coercion, intimidation, or interference with any right protected by the FHA seek help from an advocacy group, several of which are named on the page.[1]

The Amanda Document caused quite a bit of consternation among other residents of Green Meadow to the extent that Mr. Noorman called Green Meadow's attorney, Mary Williams, who was experienced in landlord-tenant matters, including evictions from mobile home parks. Ms. Williams met with several tenants in the mobile home park laundry room. Donald David, the father of "Amanda," told Ms. Williams that he was fearful for his daughter. Ms. Conaway, who lived next to Buchanan, told Ms. Williams that she was fearful of Buchanan, whom she perceived to be coming on to her as if he were her boyfriend. Another man, whose name Ms. Williams did not remember, was concerned because Buchanan had a long distance listening device which this man believed Buchanan was using to eavesdrop on residents of the community.[2] Another resident, a former friend of Buchanan's deceased mother, was fearful that Buchanan was going to try to get into her home. Mr. Doyle, another neighbor, said that Buchanan was intercepting on a police scanner transmissions from a baby monitor in Mr. Doyle's nearby mobile home.[3]

Based upon the Amanda Document and the concerns expressed by some other Green

---

[1]After Buchanan placed the Amanda Document in the mailboxes, Mr. Noorman or someone else from Green Meadow reported Buchanan's activity to the Postal Inspector. The Postal Inspector, after investigating the matter, told Buchanan that he would have been better off paying for postage on the items left in the mailboxes. Subsequently, Buchanan voluntarily gave the Post Office a check for $37.00, which was the cost of mailing 100 pieces to the residents of Green Meadow.

[2]Buchanan possessed a sound amplification device that he would use and that the neighbors could see him using. Buchanan testified that the device was not very powerful and that he did not use it to listen in on other residents of the mobile home park. Of course, the other residents would not know what Buchanan heard.

[3]Buchanan did not purposefully use the scanner to listen in on his neighbor's baby monitor. Instead, he inadvertently picked up the transmission and thereafter advised his neighbor to be careful because conversations inside the house could be heard over the baby monitor.

Meadow residents, Ms. Williams recommended that Green Meadow evict Buchanan from the mobile home park for "just cause."[4] The fact that Buchanan had disseminated information regarding the FHA and other civil rights to residents of the mobile home park on December 15 (along with the Amanda Document) and on prior occasions had no bearing on Green Meadow's decision to seek to evict Buchanan. After a two day trial, the state district judge denied Green Meadow's request to evict Buchanan.

**Conclusions of Law**

As the parties agree, an essential element of Buchanan's claim that Green Meadow violated 42 U.S.C. § 3617 is that Green Meadow unlawfully coerced, intimidated, threatened, or interfered with Buchanan in his attempt to aid or encourage other people who are members of a protected class in the exercise of their housing or civil rights. Green Meadow's act, the attempted eviction in this case, must be on account of Buchanan's actions in aiding or encouraging persons in a protected class in the exercise of their rights. *See Stackhouse v. DeSitter*, 620 F. Supp. 208, 210-11 (N.D. Ill. 1985).

Buchanan failed to establish by a preponderance of the evidence that Green Meadow's attempted eviction was on account of his aiding or encouraging protected class persons in the exercise of their rights. The court concludes that Green Meadow's true motive for the eviction was that Ms. Williams and Mr. Noorman, based upon the information that they had received, perceived Buchanan to be a "scary person" in the eyes of other residents of the mobile home park and that Buchanan was, therefore, disrupting the other residents' enjoyment of the community.

---

[4]Green Meadow cited several grounds for the eviction in its state court complaint, including failure to abide by the rules and regulations of the mobile home park, conduct by a resident upon the mobile home park premises that is a substantial annoyance to other residents, and failure to maintain a mobile home and lot in reasonable condition. Buchanan's use of other residents' mailboxes to distribute the Amanda Document was a basis of one or more of the grounds cited for eviction.

Buchanan's claim essentially relies upon *post hoc ergo propter hoc* ("after this, therefore because of this") reasoning because Green Meadow initiated the eviction shortly after Buchanan left the Amanda Document/FHA notice in other residents' mailboxes. As noted above, however, Green Meadow's reason's for initiating the eviction were unrelated to Buchanan's attempts to encourage or assist other residents in their FHA rights.

Whether or not Green Meadow gave Buchanan proper notice or an opportunity to cure any alleged wrongful conduct is irrelevant to the determination of whether Green Meadow retaliated against Buchanan in violation of the FHA. Regardless of whether Green Meadow complied with the state mobile home eviction law, as mentioned above, Buchanan failed to show that Green Meadow retaliated against Buchanan in violation of the FHA.

**Conclusion**

For the foregoing reasons, the Court concludes that Green Meadow did not violate the FHA.

A Judgment consistent with this Opinion will be entered for Green Meadow.

Dated: November 17, 2006

/s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE